```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
                       FORT WAYNE DIVISION


EDWIN D. CALLIGAN,          )
                            )
Petitioner,                 )
                            )
v.                          )   CAUSE NO. 1:07-CV-321
                            )
BILL K. WILSON,             )
                            )
Respondent.                 )
```

## OPINION AND ORDER

This matter is before the Court on several matters involving the Habeas Corpus Petition, attempting to challenge prison disciplinary proceedings that resulted in sanctions including a loss of 365 days earned credit time and demotion in credit class from CI to CII, filed on December 13, 2007, by Edwin D. Calligan, a *pro se* prisoner. For the reasons set forth below, the Court: (1) **DENIES** the Habeas Corpus Petition (DE #1); (2) **DENIES** the Motion for Evidentiary Hearing (DE #16) as moot; (3) **DENIES** the Motion for Leave of Court to Conduct Discovery (DE #17) as moot; and (4) **STRIKES** the Petitioner's First Request for Production of Documents (DE #18), Petitioner's First Set of Interrogatories to Respondent (DE #19), and Petitioner's First Request for Admissions (DE #20).

BACKGROUND

On August 14, 2007, Edwin D. Calligan ("Calligan") physically assaulted two correctional officers, McClain and Bernacet. As a result McClain issued the following conduct report for "battery upon a person," code 102:

> On the above date 8-14-07 and approx time 845 AM I OFC McClain (Unit 41) was escorting J3's to GSC ID. Upon arrival at Post #4 that's when J3 Calligan was unruly and disrespectful by calling me "black bitches." Upon enter in post # 4 Offender Calligan, E started striking me with his fist in the head and face. Also he was stomping me in my head.

(Exhibit A, DE #13-2).

Both officers received "urgent care" for injuries they suffered.[1] They also went to an outside medical facility for additional treatment. (Exhibit C1-5, DE #13-4 at 1). The record contains photographs of injuries to McClain's forehead, each elbow, and her right leg. (Exhibit C1-5, DE #13-4 at 2-5).

At the August 17, 2007, screening Calligan acknowledged receipt of the conduct violation report, and he pleaded not guilty. Additionally, Calligan requested two witnesses, offenders Jewel and Williams, photographs of McClain's injuries, and a lay advocate. (Exhibit B, DE #13-3). The original August 23, 2007, hearing date

---

[1] A separate conduct violation report was issued against Calligan as a result of his assault upon Bernacet. He has filed a petition attempting to challenge that conduct violation in 1:07-cv-320, which is pending before the Honorable Theresa L. Springmann.

was postponed to August 31, 2007, due to Jewell's unavailability. (Exhibit F, DE #13-7). No statement from either Jewell or Williams was presented at the rescheduled hearing. Although Calligan waived Jewell's statement, the record does not show he also waived Williams's. (Exhibit H, DE #13-9).

Based upon staff reports and Calligan's written statement, which he read during the hearing, the three member Conduct Adjustment Board ("CAB") convicted Calligan of the charged violation. Specifically, the CAB found: "[r]eport clearly states offender assaulted staff member. Offender's statement that he does not know how many times he struck her." (Exhibit H, DE #13-9).

Calligan raises two grounds for relief in this petition: (1) insufficient evidence of "serious bodily injury" and (2) failure to provide the requested witness statement from Williams. (DE #1 at 3). The respondent has complied with the Order to Show Cause (DE #12) and has submitted a Memorandum in Support of Response to Order to Show Cause (DE #13) with the administrative record. Calligan filed a Traverse to the Respondent's Response to Order to Show Cause (DE #14) and Memorandum in Support of Petitioner's Traverse (DE #15). This case is now ripe for ruling.

DISCUSSION

Calligan has a liberty interest in earned good time, and before it can be taken away for misconduct he is entitled to basic

procedural protections. Due process requires that prisoners in disciplinary proceedings be given: (1) advance written notice of the claimed violation at least 24 hours before the hearing; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence when it is consistent with institutional safety; and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). "In addition to procedural safeguards, the disciplinary decision must be supported by at least 'some evidence.'" *Id*. at 941; *see also Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

In *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999), the United States Court of Appeals for the Seventh Circuit explained:

> In reviewing a decision for 'some evidence,' courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.

*Id.*, at 786 (quotations marks and citation omitted).

Calligan's claim that the evidence was insufficient centers upon the alleged lack of proof McClain's injuries reflected she incurred "serious bodily injury." He argues the photographs show only "minor scrapes." Moreover, he contends no medical records or other documents establish McClain received treatment for a serious

4

injury or pain. He insists that the conduct report simply states "battery upon a person." Consequently, Calligan maintains the evidence showed no more than the lesser battery offense. (DE #15 at 5-7).

The conduct conviction at issue, a Class A offense, involves:

> Committing battery upon another person, with a weapon (including the throwing of bodily fluids or waste on another person) or inflicting serious injury.

(DE #15 at 14).

Contrary to Calligan's assertion, the conduct report expressly classified the incident as the more serious offense by the "102" code designation. Calligan's challenge to the sufficiency of the evidence focuses upon the "serious injury" aspect of the violation, because he denies the violation involved his use of a weapon. The conduct offense does not define the term "weapon" other than to include "throwing bodily fluids or waste." Calligan acknowledges the IDOC relies upon state law to define the term "serious bodily injury" for the battery prison disciplinary offenses. (DE #15 at 5). It is also appropriate to consider state law for guidance in determining whether a "weapon" may have been involved here.

In relevant part Indiana Code Section 35-41-1-8 defines "deadly weapon," as a loaded or unloaded firearm, or as a destructive device, weapon, device, taser, or electronic stun weapon, equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, or is intended

5

to be used, is readily capable of causing serious bodily injury. Ind.Code § 35-41-1-8. Indiana Code Section 35-41-1-25 defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ, or loss of a fetus." Ind.Code § 35-41-1-25.

Indiana law determines whether a weapon is a deadly weapon from a description of the weapon, the manner of its use, and the circumstances of the case. *Davis v. State*, 835 N.E.2d 1102, 1112 (Ind.Ct.App. 2005), trans. denied. "The fact finder may look to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime." *Id*. (quoting *Merriweather v. State*, 778 N.E.2d 449, 457 (Ind.Ct.App. 2002)).

Calligan does not refute the officer's account that "he was stomping me in my head." Based upon this description, the Court infers Calligan "was stomping" the officer in the head with his foot, or feet. Depending on the circumstances, some courts have held that kicking constitutes an assault with a deadly weapon; but, there is also authority that only extrinsic objects and not parts of the body are contemplated by statutes barring assault with a deadly weapon. *See* 6 Am.Jur.2d. Assault and Battery § 40; *see also*

*State v. Frey*, 505 N.W.2d 786, 791 (Wis.Ct.App. 1993) (compiling cases). "Some courts distinguish between kicking with a shod foot and with a bare foot. Depending on the manner of use and the circumstances of the case, the use of the hands or fists alone may support a conviction of aggravated assault." 6 Am.Jur.2d. Assault and Battery § 40.

In any event, the Court need not decide whether Calligan could be convicted of assault with a weapon under Indiana law. Even assuming Calligan's conduct would not support prosecution under state law, prison disciplinary boards have the authority to determine whether an inmate violated prison rules. *See generally Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).

Because Calligan was being transported to another facility when the incident occurred, the Court presumes he was not barefoot. It cannot be reasonably disputed that "stomping" someone in the head "is readily capable" of causing "serious bodily injury." Although Calligan's foot, shod or bare, would probably not be a weapon *per se*, there was sufficient evidence to support the DHB's implicit conclusion he used his foot as a weapon by stomping McClain in the head. So, there is some evidence to support the CAB's determination that Calligan committed a battery upon a person

7

with a weapon, his foot.

Moreover, the record also sufficiently supports a determination that McClain sustained serious injury during Calligan's attack upon her. As previously noted, "serious bodily injury" includes extreme pain. No bright line distinguishes "bodily injury" from "serious bodily injury." *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004). Consequently, the CAB could infer that McClain experienced extreme pain, at least at the time Calligan stomped her. "Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks and citation omitted); *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (relying on reasonable inference to conclude "some evidence" supported disciplinary charge). While the facts could be interpreted differently, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. at 457. The evidence adequately supported the CAB's finding Calligan was guilty of the charged conduct violation.

Next, Calligan argues his right to present evidence was violated. Although Calligan specifically requested Williams as a witness, the CAB did not obtain a statement from him. Unlike the case with Calligan's other witness, the record does not show

8

Calligan waived Williams's statement. Because Williams was released from prison before the disciplinary hearing, the respondent says he was unavailable. However, Calligan points out that only a cryptic notation suggests Williams was actually released.[2] (DE #15 at 9-10).

Calligan believes the lack of a statement from Williams violated his due process rights during the CAB hearing because Williams would corroborate his and another witness's statements[3] that McClain provoked the attack by spitting on him. (DE #15 at 10). *Wolff v. McDonnell*, 418 U.S. 539 (1974) requires that an inmate be afforded the opportunity to present relevant exculpatory evidence in his defense.

The CAB did not consider the statements of any witnesses. It did, however, consider Calligan's three-page statement. In it, Calligan detailed his long-standing conflict with McClain. After the two traded verbal insults, Calligan says McClain spit on him. While hitting McClain, Calligan claims he "blacked out." Calligan never denies attacking McClain. (DE #13-8). Assuming Williams

---

[2] Calligan has also filed a motion seeking an evidentiary hearing to determine when Williams was released from prison. (Motion for Evidentiary Hearing, DE #16).

[3] Offender Morris's statement indicates only that he saw Calligan's "head go back" before he began hitting the officer. (Exhibit E, DE #13-6). Calligan claims Morris's statement supports the inference that this head movement was a reaction to being spat upon. (DE #15 at 10).

9

would support Calligan's claim that McClain spit on him, such a statement would not be exculpatory. Although being spat upon is extremely offensive, it would not excuse Calligan's violent attack upon the officer. Moreover, a corroborating statement from Williams would be repetitious. "[P]risoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Even if Calligan was denied the opportunity to present Williams's statement, doing so did not deny him due process because it would be repetitious.

CONCLUSION

For the reasons set forth above, the Court: (1) **DENIES** the Habeas Corpus Petition (DE #1); (2) **DENIES** the Motion for Evidentiary Hearing (DE #16) as moot; (3) **DENIES** the Motion for Leave of Court to Conduct Discovery (DE #17) as moot; and (4) **STRIKES** the Petitioner's First Request for Production of Documents (DE #18), Petitioner's First Set of Interrogatories to Respondent (DE #19), and Petitioner's First Request for Admissions (DE #20).

**DATED: January 12, 2009**          /s/RUDY LOZANO, Judge
                                     **United States District Court**